**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MARITA E. HYMAN,**

**Plaintiff,**

**v.**

**CORNELL UNIVERSITY; DAVID SKORTON,**
**individually and as President of Cornell University;**
**DAVYDD GREENWOOD, individually and as Professor**
**of Anthropology; GEORGE HAY, individually and as**
**Professor of Law and Hearing Board Chair; STEPHEN P.**
**GARVEY, individually and as Professor of Law and**
**Review Board Chair; MARY GRANT, individually and as**
**Cornell Judicial Administrator; CHRISTINE SHOEMAKER,**
**individually and as Faculty Sex Co-Investigator in OWDELQ;**
**ALAN MITTMAN, individually and as Sexual Harassment**
**Investigator; PETER LEPAGE, individually and as Dean of**
**College of Arts and Sciences; JANICE ELLEN GAINOR,**
**individually and as Associate Dean of Graduate School;**
**TERRY PLATER, individually and as Associate Dean of**
**Graduate School; DANILEE POPPENSIEK, individually**
**and as Assistant Ombudsman; JANE FAJANS, individually**
**and as Chair of Department of Anthropology; STEVEN**
**SANGREN, individually and as Director of Graduate Studies;**
**VILMA SANTIAGO-IRIZARRY, individually and as**
**Associate Professor of Anthropology; DOMINIC BOYER,**
**individually and as Associate Professor of Anthropology;**
**KURT JORDAN, individually and as Associate Professor**
**of Anthropology; and HIROKAZU MIYAZAKI, individually**
**and as Associate Professor of Anthropology,**

**Defendants.**

---

**5:15-CV-792**
**(FJS/ATB)**

**APPEARANCES**                                    OF COUNSEL

**MARITA E. HYMAN**
West Edmeston, New York 13485
Plaintiff *pro se*

**OFFICE OF UNIVERSITY COUNSEL**          **NELSON E. ROTH, ESQ.**
Cornell University                                           **VALERIE L. DORN, ESQ.**
300 CCC Building                                           **WENDY E. TARLOW, ESQ.**
Garden Avenue
Ithaca, New York 14853
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Pending before the Court are Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 15, and Plaintiff's cross-motion for leave to replead/amend, *see* Dkt. No. 25.

Plaintiff Marita Hyman brought this action against Cornell University and seventeen individuals on June 29, 2015, alleging that a professor sexually harassed her and that Cornell University, as well as a myriad of professors and administrators, subsequently colluded against her in an effort to force her withdrawal. *See generally* Dkt. No. 1 ("*Hyman II*"). Plaintiff labels her complaint an "Amended Complaint" because she believes this action is merely a continuation of a previous case she filed in this Court. *See Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 465 (2d Cir. 2012) ("*Hyman I*"). Unlike in her previous action, Plaintiff is now appearing *pro se*; and her current complaint alleges four new causes of

action and names sixteen new Defendants.  However, as the Court will discuss more fully below, the underlying factual bases for *Hyman I* and *Hyman II* are nearly identical.

## II. BACKGROUND

This case arises from a series of emails sent between Plaintiff and Defendant Greenwood, a senior faculty member in the Department of Anthropology ("Department").  Plaintiff entered Cornell during the Fall 2002 semester to pursue a doctoral degree in education; and, in the Spring 2004 semester, she applied to switch to the Department.  Plaintiff approached Defendant Greenwood regarding her application, and he agreed to support it.  However, the Admissions Committee rejected Plaintiff's application.  Defendant Greenwood expressed surprise at this decision and encouraged Plaintiff to reapply to the Department for the following academic year and volunteered to help her in this endeavor.  To this end, Defendant Greenwood prepared a letter of support on Plaintiff's behalf, which two other faculty members signed, and emailed it to her at 12:08 am on April 27, 2004.  In May of 2004, the Department admitted Plaintiff.

Plaintiff and Defendant Greenwood maintained email contact during and after Plaintiff's transfer admission process.  However, during the spring and summer of 2004, Plaintiff sent Defendant Greenwood a series of emails, which he found to be inappropriate.  On May 1, 2004, with her admission to the Department already secured, Plaintiff sent Defendant Greenwood a message, which began with Plaintiff's wondering about "how best to approach this next phase of our relationship" and included an ambiguous discussion about love, in which Plaintiff indicated that it is "powerful . . . for productive work."  On July 15, 2004, Plaintiff emailed a message to Defendant Greenwood that contained a discussion of her relationship with her husband, with references to their sexual relationship, and her feelings about the choices she makes with her

body.  The following day, Defendant Greenwood stated his intent to cease communication with Plaintiff and his encouragement that Plaintiff "mov[e] on with life." Defendant Greenwood immediately forwarded the email conversations he had had with Plaintiff to her academic advisors, Defendants Santiago-Irizarry and Boyer, seeking guidance and to inform them of what he had been experiencing.

    In September 2004, Plaintiff and Defendant Greenwood exchanged several emails regarding Plaintiff's decision to attend a graduate seminar.  Plaintiff then continued to send Defendant Greenwood emails, culminating in a November 1, 2004 email recounting their previous email conversation, hoping that "color and light are not too far off to be found for us both, in separate places and separate spaces." *See* Dkt. No. 25-12 at 4.

    After receiving Plaintiff's November 1, 2004 email, Defendant Greenwood emailed Plaintiff and demanded that she not contact him again, including a no-contact agreement within the body of his email.  Plaintiff responded, expressing her agreement not to contact him. Defendant Greenwood also emailed Defendants Plater and Gainor, the academic deans of the Department, regarding his conversations with Plaintiff.

    After November 1, 2004, Defendant Santiago-Irizarry resigned from her position as Plaintiff's doctoral advisor.  Thereafter, Plaintiff reached out to Defendants Fajans, Boyer, Sangren, Miyazaki, Gainor, Plater and Professor Riles regarding her communications with Defendant Greenwood and seeking help in finding a new academic advisor.  According to Plaintiff, none of the Defendants attempted to help her complete her academic studies.  Plaintiff contends that Defendant Greenwood's discrimination resulted in her inability to secure an academic advisor for six months.  In 2005, Plaintiff sought help from Defendant Poppensiek, of

Cornell's Office of the University Ombudsman, who refused to mediate her dispute with the Department.[1]

On or about November 23, 2006, Plaintiff responded to a campus-wide email from Cornell University President, and Defendant in this action, Skorton in which he asked for input on his review of the Cornell Code of Conduct. Plaintiff protested the treatment she received within the Department, stating that faculty members had repeatedly violated her rights under the Code. Plaintiff copied Defendant Greenwood on the email to Defendant Skorton.

The day after Plaintiff copied Defendant Greenwood on her email to Defendant Skorton, Defendant Greenwood emailed Defendants Gainor and Plater to complain that Plaintiff had violated their no-contact agreement. Defendant Greenwood next contacted the Office of Workforce Diversity, Equity and Life Quality ("OWDELQ") and described Plaintiff's alleged inappropriate behavior and her breach of the agreement. On December 1, 2006, Defendant Greenwood submitted a report to Defendant Grant of Cornell's Office of the Judicial Administrator. On December 12, 2006, Defendant Grant mistakenly informed Plaintiff that Defendant Greenwood had filed a complaint against her.

On March 23, 2007, Defendant Grant contacted Defendant Greenwood to follow up on their previous communication regarding Plaintiff and to determine if Plaintiff had contacted Defendant Greenwood in the meantime. In his reply to Defendant Grant, Defendant Greenwood expressed surprise that she had followed up with him regarding Plaintiff's behavior. Defendant Greenwood emailed Defendant Grant on April 16, 2007, and clarified that he had not yet filed a

---

[1] In April 2005, Plaintiff secured a new academic advisor, and Defendant Miyazaki served as a minor committee member. Defendant Miyazaki ultimately resigned from Plaintiff's advising committee on October 7, 2007, after Defendants Mittman and Shoemaker interviewed him regarding Plaintiff's sexual harassment complaint.

formal complaint against Plaintiff and that he considered any complaints that Plaintiff filed to be additional harassment.

On April 17, 2007, Plaintiff filed a formal complaint with OWDELQ, alleging that Defendant Greenwood had violated Cornell's sexual harassment policy in relation to his conduct toward her. On May 4, 2007, Defendant Grant emailed Plaintiff to inform her that she had been mistaken in her December 12, 2006 email and that Defendant Greenwood had only made an inquiry to seek advice and had not filed a complaint.

On May 25, 2007, Defendant Greenwood filed a formal complaint. On September 18, 2007, the University Hearing Board met to discuss Defendant Greenwood's complaint against Plaintiff. The panel ultimately found that Plaintiff's decision to cc: Defendant Greenwood on her email to Defendant Skorton was made with the intent to harass him and that Plaintiff had violated the Code of Conduct when she sent that email to Defendant Greenwood in breach of their no-contact agreement. The panel imposed a punishment of a further no-contact order and a letter of reprimand. Defendant Hay was the hearing board chair. The University Review Board later denied Plaintiff's appeal of this decision. Defendant Garvey was the review board chair.

On December 11, 2007, the Cornell University Division of Human Resources released an investigative report regarding Plaintiff's complaint that Defendant Greenwood's behavior toward her violated Policy 6.4, the University policy prohibiting discrimination, harassment, and bias. Defendants Mittman and Shoemaker authored the report, in which they concluded that Plaintiff's complaint was "fundamentally frivolous" and determined that Defendant Greenwood had not violated Policy 6.4. On January 7, 2008, Plaintiff appealed the Division of Human Resources' decision to Defendant Lepage of the College of Arts and Sciences. Defendant Lepage informed

Plaintiff that he had accepted the Division of Human Resources' conclusions, denied her appeal, and stated that he would take no further action in the matter.

Plaintiff then filed an Article 78 action in state court seeking to overturn Defendant Cornell's disciplinary decision against her. *See* Dkt. No. 15-5. On November, 23, 2009, the New York Supreme Court found that Cornell's decisions "were made in conformance with its own published rules and guidelines" and "were neither arbitrary [n]or capricious." *See id*. at 2. On January 10, 2011, the Third Judicial Department upheld the lower court's decision. *See* Dkt. No. 15-6.

On May 25, 2010, Plaintiff filed *Hyman I*, in this District. The defendants in *Hyman I*, Cornell University and Davydd Greenwood, moved to dismiss for failure to state a claim. In *Hyman I*, Plaintiff alleged that the defendants had discriminated against her in violation of Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681(a) and retaliated against her in violation of New York's Human Rights Law and Civil Rights Law. *See* Dkt. No. 5-3 at ¶¶ 69-71. This Court found that Plaintiff had failed to allege "any facts that plausibly indicate[d] either deliberate indifference or a gender bias on part of Defendant Cornell" and thus dismissed Plaintiff's Title IX claim. *Hyman I*, 834 F. Supp. 2d at 83. The Court similarly dismissed the state-law claims because Plaintiff had failed to allege any facts that would support a plausible causal connection between Defendant Cornell University's prosecution of her and her complaint against Defendant Greenwood. *See id.* at 84. The Second Circuit affirmed this Court's decision on June 12, 2012. *See Hyman v. Cornell Univ.*, 485 F. App'x 465 (2d Cir. 2012). Plaintiff's subsequent request for a hearing *en banc* before the Second Circuit and her petition for a *writ of certiorari* to the United States Supreme Court were denied. *See* Dkt. Nos. 15-11, 15-12.

Plaintiff filed *Hyman II* on June 29, 2015, wherein she re-asserted all of the factual allegations from *Hyman I*, albeit with substantially more detail and commentary. The vast majority of the allegations in Plaintiff's complaint in *Hyman II* occurred between 2004 and 2007; however, Plaintiff also included two new factual allegations. First, Plaintiff alleged that, in July 2012, she had emailed Defendant Kurt Jordan, the Director of Graduate Studies for Cornell University's Anthropology Department; and Defendant Jordan did not reply. *See* Dkt. No. 1 at ¶ 474. Further, Plaintiff claimed that, based on Cornell University's inaction regarding her complaints about Defendant Greenwood, she was forced to withdraw from her Ph.D. program in April 2013. *See id.* at ¶ 476.

In the present case, *Hyman II*, Plaintiff asserts a total of seven causes of action against eighteen Defendants, including Cornell University and Davydd Greenwood, who were the defendants in *Hyman I*. In Count I, Plaintiff claims Defendant Cornell University violated the First Amendment to the United States Constitution by punishing her for responding to the campus president in a 2006 email and "chill[ing] [her] freedom to speak against further acts of [s]exual [h]arassment, [s]exual [d]iscrimination and [r]etaliation[.]" *See* Dkt. No. 1 at ¶¶ 483-84. In Count II, Plaintiff claims that Defendant Cornell University retaliated against her for sending the 2006 email to the campus president and for filing a sexual harassment complaint against Defendant Greenwood in April 2007 in violation of Title IX. *See id.* at ¶ 485. In Count III, Plaintiff claims Defendant Cornell University discriminated against her because of her sex by "prosecuting" her for sexual harassment and "concealing exculpatory evidence" that would have exonerated her of wrongdoing in violation of Title IX. *See id.* at ¶ 487. In Count IV, Plaintiff claims she was sexually harassed after terminating "a one-week long sexual on-line Email

exchange" in July 2004 in violation of Title IX, against Defendant Cornell University.[2]  *See id.* at

¶ 488.  In Count V, Plaintiff claims that Defendant Cornell University breached its contract with

her by failing to investigate her claims and by prosecuting her.[3]  *See id.* at ¶¶ 489-90.  In Count

VI, Plaintiff claims that "Defendant Greenwood, other Defendants named in this action and

Defendant Cornell University" violated "Section 40-C of New York State Civil Rights Law."

*See id.* at ¶ 491.  Finally, in Count VII, Plaintiff claims that "Defendant Greenwood, other

Defendants named in this action and Defendant Cornell University" violated "Section 296(7) of

the New York State Executive (Human Rights) Law."  *See id.* at ¶ 492.


## III. DISCUSSION

### A.    Plaintiff's motion for leave to replead/amend

As an initial matter, Plaintiff argues that her current complaint is merely a motion for

leave to replead or amend her May 25, 2010 action, *Hyman I*, which this Court previously

dismissed. According to Plaintiff, her "claim does 'relate back' to facts brought forward in the

2010 claim but with substantive supplemental changes."  *See* Dkt. No. 25-1 at 15.  In essence,

Plaintiff is arguing that the complaint in this case, which she filed on June 29, 2015, is, in form

and substance, a motion for leave to replead/amend her previously dismissed law suit.  Plaintiff

argues that "'[t]he *Foman* holding cannot be reconciled with the proposition that the liberal spirit

of Rule 15 necessarily dissolves as soon as final judgment is entered.'"  *See id.* (quoting *Williams*

---

[2] Plaintiff also states that Defendant Greenwood's alleged sexual harassment violated Title IX.
*See* Dkt. No. 1 at ¶ 488.  However, "there is no individual liability under Title IX."  *Miotto v.
Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (collecting cases).

[3] In her memorandum, Plaintiff argues that the alleged contract is the implied contract that she
would receive a diploma if she complied with school policy.  *See* Dkt. No. 25-1 at 36.

*v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011)).  Thus, Plaintiff contends that her "updated Supplemental/Amended Pleading should be granted and her statute of limitations tolled to the date Plaintiff commenced action in district court, May 25, 2010."  *See id.*

"'[A] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b).'"  *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quotation and other citation omitted).  Rule 59(e) requires that "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  *See* Fed. R. Civ. P. 59(e).  Since Plaintiff filed her complaint in this case on June 29, 2015, years after this Court entered judgment in *Hyman I*, Rule 59(e) does not apply.

Rule 60(b) provides six grounds for a party to seek relief from a judgment, only one of which is even arguably relevant here.  Rule 60(b)(6) authorizes a court to grant relief from a final judgment for "any . . . reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  A party must file a Rule 60(b)(6) motion "within a reasonable time."  Fed. R. Civ. P. 60(c)(1).[4]  Furthermore, "it is well established . . . that a 'proper case' for Rule 60(b)(6) relief is only one of 'extraordinary circumstances,' . . . or 'extreme hardship.'"  *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (internal quotations omitted).  Thus, a motion must be both timely and assert extraordinary grounds that justify relief -- neither of which is present here.  Therefore, the Court finds that, to the extent that Plaintiff intended her complaint in this action to serve as a motion to vacate the judgment in *Hyman I* and amend her complaint in that action, she has failed to meet the standard for granting such relief; and, therefore, the Court denies her motion.

---

[4] The Court entered its judgment in *Hyman I* on July 5, 2011.  *See Hyman I*, No. 5:10-CV-613, Dkt. No. 40.  Plaintiff commenced this action nearly four years later on June 29, 2015.

**B.       Motion to dismiss**

As recounted above, Plaintiff has asserted seven causes of action against eighteen Defendants.  Defendants, in turn, have asserted the following five grounds to support their motion to dismiss Plaintiff's complaint: (1) all of Plaintiff's claims are time barred, *see* Dkt. No. 15-1, Def's. Br. at 10-12; (2) *res judicata* and collateral estoppel bar Plaintiff's claims, *see id.* at 12-14; (3) Plaintiff's First Amendment claim fails because she has not alleged any state action, *see id.* at 14-15; (4) Plaintiff's breach-of-contract claim fails because she did not reference any contract, *see id.* at 16-20; and (5) Plaintiff failed to serve Defendants Boyer, Fajans, Gainor, Grant, Jordan, Lepage, Mittman, Miyazaki, Plater, Poppensiek, Sangren, Santiago-Irizarry, Shoemaker, and Skorton.  *See id.* at 20-22.

*1. Standard of review*

Courts use a two-step inquiry when deciding a 12(b)(6) motion.  First, "they isolate the moving party's legal conclusions from its factual allegations."  *See Hyman I*, 834 F. Supp. 2d at 81.  Second, the court must accept factual allegations as true and "determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In this regard, a pleading must contain more than a "blanket assertion[ ] of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  Thus, to withstand a motion to dismiss, a pleading must be "plausible on its face," such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).

### 2. *Res judicata -- claim preclusion*

The doctrine of *res judicata*, or claim preclusion, has traditionally proclaimed that "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108-09 (2d Cir. 2001) (quoting *Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir. 1968)). Moreover, "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (citation omitted).

For claim preclusion to apply, the following three requirements must be met: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).

### a. *Cornell University*

The present action involves five claims against only Defendant Cornell University and two claims against Defendant Cornell University and 17 other named Defendants. The claims against Defendant Cornell University alone are Count I (First Amendment), Count II (Title IX retaliation), Count III (Title IX discrimination), Count IV (Title IX sexual harassment), and Count V (breach-of-contract). Defendant Cornell University is also a named Defendant as to Count VI (New York Civil Rights Law) and Count VII (New York Human Rights Law).

As recounted above, in *Hyman I*, Plaintiff alleged that Defendant Cornell University discriminated against her in violation of Title IX and retaliated against her in violation of New

- 12 -

York's Human Rights Law and Civil Rights Law. *See* Dkt. No. 5-3 at ¶¶ 69-71. This Court found that Plaintiff had failed to allege "any facts that plausibly indicate either deliberate indifference or a gender bias on part of Defendant Cornell" and thus dismissed Plaintiff's Title IX claim. *Hyman I*, 834 F. Supp. 2d at 83. The Court similarly dismissed the state-law claims because Plaintiff had failed to allege any facts that would support a plausible causal connection between Defendant Cornell's prosecution of her and her complaint against Defendant Greenwood. *See id.* at 84. Therefore, this Court dismissed all of her claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* at 85.

There is no doubt that *Hyman I* involved an adjudication on the merits. *See Teltronics Servs., Inc. v. L M Ericsson Telecomms., Inc.*, 642 F.2d 31, 34 (2d Cir. 1981) (stating that "'judgments under Rule 12(b)(6) are on the merits, with res judicata effects . . . .'" (quotation omitted)). The second requirement, that the previous action involve the same parties or those in privity with them, is also satisfied with respect to Defendant Cornell University.

The third requirement, that the claims asserted in the subsequent action were, or could have been, raised in the prior action, is satisfied "only where the transaction or connected series of transactions at issue in both suits is the same, that is 'whe[re] the same evidence is needed to support both claims, and whe[re] the facts essential to the second were present in the first.'" *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (quoting *NLRB v. United Technologies Corp.*, 706 F.2d at 1260) (other citations omitted). "[T]he fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (citation omitted). Rather, courts "look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and

whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (quotation and other citation omitted). Thus, the analysis turns on whether the facts giving rise to the claims in *Hyman II* are the same facts that gave rise to the claims in *Hyman I. See Berlitz Schs. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980) (stating that, "whatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata").

### (i) Title IX claims, Counts II, III, and IV

In *Hyman I*, Plaintiff alleged "that Defendant Cornell wrongly found that she had committed an infraction under the University Code of Conduct and that Defendant Cornell selectively enforced its Code of Conduct policy based on gender." *Hyman I*, 834 F. Supp. 2d at 82 (citation omitted). In essence, the Court construed Plaintiff's 2010 complaint as raising a Title IX claim based on Defendant Cornell University's alleged deliberate indifference towards Plaintiff's accusations that Defendant Greenwood sexually harassed her and that Defendant Cornell University's subsequent investigation against her was retaliatory. *See id.* at 83 (stating that "Plaintiff has made no allegations that would indicate that Defendant Cornell's investigation of her was retaliatory").

Plaintiff's current Title IX retaliation claim, Count II, alleges that "unlawful Retaliatory animus" motivated Defendant Cornell University's prosecution against her after she filed her 2007 complaint. *See* Dkt. No. 1 at ¶ 485. Furthermore, she claims that "unlawful Retaliatory animus" motivated Defendant Cornell University's failure to investigate her complaint. *See id.* at ¶ 486. Plaintiff's Title IX sexual discrimination claim, Count III, alleges that Defendant Cornell

University unlawfully prosecuted her for replying to a 2006 email from Defendant Skorton. *See id.* at ¶ 487. Finally, Plaintiff's Title IX sexual harassment claim, Count IV, broadly construed, alleges that Defendant Cornell University was deliberately indifferent to Defendant Greenwood's sexual harassment. *See id.* at ¶ 488.

It is evident that Counts II, III, and IV are based on the same predicate facts that Plaintiff alleged in *Hyman I.* At the center of Plaintiff's claims are the email exchanges between Plaintiff and Defendant Greenwood, and Defendant Cornell University's subsequent handling of Defendant Greenwood's and Plaintiff's internal complaints. Plaintiff supports her current Title IX claims by alleging generally that between 2004 and 2007 Cornell University professors and administrators sexually harassed her, discriminated against her, conspired to ruin her academic career, and provided an unfair, rigged, and retaliatory grievance process. In other words, the same facts needed to support Counts II, III, IV were present and essential to Plaintiff's claims in *Hyman I.* Therefore, the Court grants Defendants' motion to dismiss Plaintiff's Title IX claims, Counts II, III, and IV, against Defendant Cornell University on the basis of *res judicata*. [5]

---

[5] The Court notes that Plaintiff alleged two facts that occurred after she filed her complaint in *Hyman I.* First, in July 2012, Plaintiff emailed Defendant Kurt Jordan, the Director of Graduate Studies for Cornell's Anthropology Department about Defendant Davydd Greenwood, and Defendant Jordan did not reply. *See* Dkt. No. 1 at ¶ 474. Plaintiff also alleges that in 2013 she was forced to abandon her studies and withdraw from Cornell University. *See id.* at ¶ 476. Generally, "[i]f the second litigation involve[s] different transactions, and especially subsequent transactions, there . . . is no claim preclusion." *First Jersey*, 101 F.3d at 1464. However, these two subsequent factual allegations are temporally and substantively unrelated to the underlying conduct required to prove Plaintiff's claims, and they neither form the basis for, nor generally support, her Title IX, First Amendment or New York state-law claims in the current action.

### *(ii) First Amendment claim, Count I*

In Count I, Plaintiff alleges that Defendant Cornell University publicly prosecuted her after she filed a 2007 Sexual Harassment Complaint against Defendant Greenwood. *See* Dkt. No. 1 at ¶ 483. According to Plaintiff, this prosecution chilled her freedom to speak against further acts of sexual harassment, sexual discrimination, and retaliation. *See id*. Furthermore, Plaintiff alleges that Defendant Cornell University did not diligently investigate her 2007 Sexual Harassment Complaint, which further chilled her freedom to speak out about sexual harassment, sexual discrimination, and retaliation on campus. *See id.* at ¶ 484.

To prevail on her free speech claim, Plaintiff must prove that "(1) [s]he has an interest protected by the First Amendment; (2) [Defendant Cornell University's] actions were motivated or substantially caused by [her] exercise of that right; and (3) [Defendant Cornell University's] actions effectively chilled the exercise of [her] First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)).

As Plaintiff states in her complaint, the genesis of her First Amendment claim is that Defendant Cornell University's investigation chilled her ability to speak out against sexual harassment. The facts needed to support her First Amendment claim, i.e. whether she engaged in protected speech and whether Defendant Cornell University's subsequent investigation constituted retaliation that chilled the exercise of her First Amendment rights, require proof of the same facts that Plaintiff alleged in *Hyman I*. Thus, the claims arise from the same common nucleus of operative facts; and, therefore the Court grants Defendants' motion to dismiss Plaintiff's First Amendment claim, Count I, on the basis of *res judicata*. *See Magi XXI, Inc. v. Stato Della Citá Del Vaticano*, 22 F. Supp. 3d 195, 202 (E.D.N.Y. 2014) (stating that "[*r*]*es*

*judicata* bars claims seeking to enforce rights not brought in a prior litigation when both sets of claims relied on the same nucleus of operative fact" (citation omitted)).[6]

### (iii) Breach-of-contract claim, Count V

Plaintiff alleges a breach-of-contract claim, Count V, against Defendant Cornell University. "Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award [her] a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citations omitted). "The terms of the implied contract are 'contained in the university's bulletins, circulars and regulations made available to the student.'" *Id.* (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654, 511 N.Y.S. 2d 880 (2d Dep't 1987)). Further, the institution must "'act in good faith in dealing with students.'" *Id.* (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y. 2d 408, 413-

---

[6] Defendants also argue that Plaintiff's First Amendment claim fails because she has not alleged any state action on the part of Defendant Cornell University. *See* Dkt. No. 15-1 at 14-15. According to Defendants, Plaintiff's allegations concern the operation of Defendant Cornell University's College of Arts and Sciences, where the Department of Anthropology resides, and the Graduate School, both of which are privately endowed colleges within Defendant Cornell University. *See id.* at 15.

To allege state action, a plaintiff must show that "there is a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) (citation omitted). As recounted above, Plaintiff's First Amendment claim relates to the alleged impact of Defendant Cornell University's enforcement of its policies and execution of its disciplinary process. Plaintiff has therefore not included any allegations of state involvement or oversight. *See Curto v. Smith*, 248 F. Supp. 2d 132, 139-40 (N.D.N.Y. 2003) (holding that "creation and enforcement of policies relating to student discipline, academic standards, and other day-to-day operations of the College of Veterinary Medicine are entirely committed to the discretion of the private institution and, thus, are not materially 'entwined' with the State of New York" (footnote omitted)). Therefore, the Court alternatively grants Defendants' motion to dismiss Plaintiff's First Amendment claim, Count I, on the basis of lack of state action.

14, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (1980)). "Also implicit is that the student must fulfill her end of the bargain by satisfying the university's academic requirements and complying with its procedures if she hopes to receive her degree." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998).

Plaintiff asserts that Defendant Cornell University breached its contract with her

[b]y failing to support [her] academic Ph.D. work and instead escalating a hostile sex-based slander campaign, Cornell breached the University's implicit Contract with Plaintiff and prevented her from reaching her educational goals. By deliberately endangering Plaintiff's physical safety and psychological welfare with its public sex-based slander campaign even after [she] requested a simple "apology" in a formal Police 6.4 Sexual Harassment Complaint, Cornell Breached the University's contract with Plaintiff and jeopardized her life over and above the campus threat to the average Cornell student.

*See* Dkt. No. 25-1 at 41.

In her memorandum, Plaintiff restates several instances were members of Defendant Cornell University's faculty allegedly breached Defendant Cornell University's implied contract with her. *See id.* at 37-41. For example, Plaintiff alleges that her academic advisors breached Defendant Cornell University's contract when they abruptly resigned after Defendant Greenwood shared the email communications he had been having with Plaintiff. *See id.* at 37. Also, Plaintiff claims that various parties lied during testimony at her disciplinary hearing. *See id.* at 28-39. Furthermore, in her complaint, Plaintiff asserts that Defendant Gainor encouraged Defendant Greenwood to violate Defendant Cornell University's policy which, according to Plaintiff, breached Defendant Cornell University's contract with her. *See* Dkt. No. 1 at ¶¶ 188-89. Finally, Plaintiff alleges that Defendant Garvey breached the review board rules when handling her appeal of Defendant Hay's disciplinary meeting. *See id.* at ¶ 471.

The facts necessary to support Plaintiff's current breach-of-contract claim were present in *Hyman I.* The only outlier is that Plaintiff alleges that she was forced to withdraw in 2013.[7] *See* Dkt. No. 1 at ¶ 476. However, the entire factual predicate for her withdrawal, with the exception of one unanswered email in 2012, occurred between 2004 and early 2008 and involved the same nucleus of facts that were present in her first action. In other words, assuming that Plaintiff's allegations could support a breach-of-contract claim, the only breaches involve the same events that formed the basis of her previous lawsuit. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's breach-of-contract claim, Count V, based on *res judicata*.

### *(iv) New York Human Rights and Civil Rights Law claims, Counts VI and VII*

Plaintiff alleges, in *Hyman II*, that Defendant Cornell University violated the New York Human Rights Law and New York Civil Rights Law. New York Executive Law § 296(7) (the "Human Rights Law") provides, in pertinent part, that it is "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because . . . she has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7). The Human Rights Law also states that "[i]t shall be an unlawful discriminatory practice for an education corporation or association . . . to permit the harassment

---

[7] The Court further finds that Plaintiff's unilateral withdrawal from her Ph.D. program fails to form the basis of an independent breach-of-contract claim. "[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Gally*, 22 F. Supp. 2d at 207. Here, removing the facts that formed the basis of her previous lawsuit, Plaintiff's claim amounts to nothing more than an accusation that she was forced to resign because she was mistreated.

of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age, or marital status[.]" N.Y. Exec. Law § 296(4). Similarly, Section 40–c of the New York State Civil Rights Law provides, in pertinent part, that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability . . . be subjected to any discrimination in his or her civil rights, or to any harassment[.]" N.Y. Civ. Rights Law § 40-c(2).

To establish a claim under the Human Rights Law, "a plaintiff must demonstrate (1) that she engaged in protected activity; (2) that the defendant knew of that activity; (3) that she suffered an adverse educational decision; and (4) that a causal connection existed between the protected activity and the adverse decision." *Hyman I*, 834 F. Supp. 2d at 84 (citation omitted). Furthermore, "[a] valid cause of action based on a violation of Section 296 of the New York Executive Law exposes the defendant to civil penalties under Section 40-c of the New York Civil Rights Law, recoverable by the person aggrieved." *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) (citing *Hart v. Sullivan*, 84 A.D.2d 865, 866, 445 N.Y.S. 2d 40, 41 (N.Y. App. Div. 1981)) (other citations omitted). Therefore, "[f]acts sufficient to sustain a cause of action under New York Executive Law section 296 will support a cause of action under section 40-c of the Civil Rights Law." *Id.* (citing *People v. Hamilton*, 125 A.D.2d 1000, 1001, 511 N.Y.S. 2d 190 (N.Y. App. Div. 1986)) (other citation omitted).

In *Hyman I*, Plaintiff similarly alleged causes of action based on New York Human Rights Law and Civil Rights Law against Defendant Cornell University. Her *Hyman I* claims alleged that Defendant Cornell University mishandled her complaint against Defendant Greenwood and instituted a retaliatory disciplinary process against her after she filed a complaint against Defendant Greenwood. It is apparent that Plaintiff's current claims arise out of the same

nucleus of operative facts as did her *Hyman I* claims. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights Law and Civil Rights Law claims, Counts VI and VII, against Defendant Cornell University on the basis of *res judicata*.

### b. Davyyd Greenwood

For the same reasons as stated above, *res judicata* bars Plaintiff's claims against Defendant Greenwood. In *Hyman I*, Plaintiff asserted that Defendant Greenwood violated New York Human Rights Law and Civil Rights Law when he sexually harassed her through their email conversations and, afterward, retaliated against her for filing a complaint. Plaintiff's allegations against Defendant Greenwood are the same as they were in *Hyman I*. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights Law and Civil Rights Law claims, Counts VI and VII, against Defendant Greenwood on the basis of *res judicata*.

### c. The sixteen other individual Defendants

There are sixteen Defendants whom Plaintiff did not name as defendants in *Hyman I*. However, "[w]hen a party has litigated a claim to final judgment, that party cannot avoid the *res judicata* effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant." *Lacy v. Principi*, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004) (citation omitted); *see also Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995) (stating that "the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion"

(citation omitted)). "Courts have long recognized that privity exists between coemployees or employees and their employers for *res judicata* purposes." *McCarroll v. U.S. Fed. Bureau of Prisons*, No. 3:11-cv-934, 2012 WL 3940346, *8 (D. Conn. Sept. 10, 2012) (citations omitted); *see also Alaimo v. Gen. Motors Corp.*, No. 07-CV-7624, 2008 WL 4695026, *2 (S.D.N.Y. Oct. 20, 2008); *Lacy*, 317 F. Supp. 2d at 448.

A brief review of the factual allegations against each individual Defendant in the present action, with the exception of Defendant Jordan, reveals that Plaintiff bases her current claims on factual allegations that formed the foundation for her claims in *Hyman I*. These claims are as follows:

(1) Defendant **Skorton**, then-President of Defendant Cornell University, did not answer her November 2006 email regarding her complaints about Defendant Greenwood.

(2) Defendant **Hay**, a law professor and the hearing board chair, conducted the September 2007 disciplinary hearing regarding Defendant Greenwood's complaint unlawfully and discriminatorily. She also alleges that Defendant Hay pre-determined the outcome of the hearing.

(3) Defendant **Garvey**, a law professor and the review board chair, conducted the January 2008 review hearing in a discriminatory manner.

(4) Defendant **Grant**, Defendant Cornell University's Judicial Administrator, lied to her in 2007-08 and conspired with the other Defendants to find her guilty of sexual harassment and encouraged and facilitated Defendant Greenwood's retaliatory allegations against her.

(5) Defendants **Shoemaker** and **Mittman**, Defendant Cornell University's sexual harassment investigators, failed to conduct an adequate investigation into her 2007 complaint that Defendant Greenwood sexually harassed her. They produced their report in December 2007.

(6) Defendant **Lepage**, Dean of the College of Arts and Sciences, accepted the results of Defendants Mittman and Shoemaker's report without conducting an independent investigation in 2008.

- 22 -

(7) Defendants **Gainor** and **Plater**, Associate Deans of the Graduate School, accepted Defendant Greenwood's accusations of sexual harassment in 2004 and thereafter refused to support her academic pursuits.

(8) Defendant **Poppensiek**, Assistant Ombudsmen at Defendant Cornell University, failed to mediate her 2005 complaints regarding Defendant Greenwood's conduct.

(9) Defendant **Fajans**, then-Chair of the Department of Anthropology, sexually discriminated against her in several classes in 2004-05 and conspired against her academic pursuits.

(10) Defendant **Sangren**, then-Director of Graduate Studies, discriminated against her in 2004 by refusing to allow her to reform her academic advising committee.

(11) Defendant **Santiago-Irizarry**, her former Ph.D. committee chair, resigned from her position and never spoke to Plaintiff again after Defendant Greenwood revealed his conversations with Plaintiff in 2004.

(12) Defendant **Boyer**, a former member of her Ph.D. faculty committee, resigned in 2004 and refused to help Plaintiff after discovering the contents of her emails with Defendant Greenwood.

(13) Defendant **Miyazaki**, a former member of her Ph.D. faculty committee, initially refused to be Plaintiff's faculty chair and then, in 2007, abruptly resigned after Defendants Mittman and Shoemaker interviewed him.

In sum, because privity exists between Defendant Cornell University and these individual Defendants, as employer and employees, for *res judicata* purposes and because the factual allegations on which Plaintiff bases her current claims were present in *Hyman I*, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights Law and Civil Rights Law claims, Counts VI and VII, as to Defendants, Skorton, Hay, Garvey, Grant, Shoemaker, Mittman, Lepage, Gainor, Plater, Poppensiek, Fajans, Sangren, Santiago-Irizarry, Boyer, and Miyazaki based on *res judicata*.[8]

---

[8] Alternatively, Defendants argue that Plaintiff's claims against Defendants Skorton, Hay,

### 3. Merits of claims against Defendant Jordan

Plaintiff has asserted claims against Defendant Jordan under New York Human Rights Law and Civil Rights Law, Counts VI and VII, based on the lone accusation that he failed to answer an email that she sent him in 2012. This accusation, however, does not plausibly state a claim under either of these statutes. As noted above, to establish such a claim, "a plaintiff must demonstrate (1) that she engaged in protected activity; (2) that the defendant knew of that activity; (3) that she suffered an adverse educational decision; and (4) that a causal connection existed between the protected activity and the adverse decision." *Hyman I*, 834 F. Supp. 2d at 84 (citation omitted). Failing to respond to an email, however, does not constitute an adverse educational decision. *See, e.g., Guerra v. Murphy*, No. 1:15-CV-1168, 2016 WL 7480405, *5 (N.D.N.Y. Dec. 29, 2016) (finding that refusing to respond to an email is not adverse employment action (citation omitted)); *see also Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12 Civ. 925, 2013 WL 6244158, *15 (S.D.N.Y. Dec. 2, 2013) (finding that "supervisory inaction" is insufficient to establish an adverse employment action (citations omitted)). Therefore, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights

---

Garvey, Grant, Shoemaker, Mittman, Lepage, Gainor, Plater, Poppensiek, Fajans, Sangren, Santiago-Irizarry, Boyer, and Miyazaki are time-barred. Plaintiff's claims pursuant to New York Human Rights Law and Civil Rights Law are subject to a three-year statute of limitations. *See Goldin v. Eng'rs Country Club*, 54 A.D.3d 658, 659 (2d Dep't 2008) (citations omitted)); *see also Durham v. Suny Rockland Cmty. Coll.*, No. 14-CV-607, 2016 WL 128214, *6 (S.D.N.Y. Jan. 12, 2016) (stating that "[t]he statute of limitations for claims brought under § 40-c is three years from the date of injury caused by discrimination" (citation omitted)). "The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). Therefore, to be within the applicable statute of limitations, Plaintiff's New York state-law claims must have accrued on or after June 29, 2012. None of Plaintiff's allegations against these Defendants occurred after that date. Therefore, the Court finds that Plaintiff's state-law claims against each of these Defendants are time-barred.

Law and Civil Rights Law claims, Count VI and VII, against Defendant Jordan for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for leave to replead/amend, see Dkt. No. 25, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's First Amendment claim, Count I, based on *res judicata*, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's Title IX retaliation claim, Count II, against Defendant Cornell University based on *res judicata*, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's Title IX discrimination claim, Count III, against Defendant Cornell University based on *res judicata*, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's Title IX sexual harassment claim, Count IV, against Defendant Cornell University based on *res judicata*, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's breach-of-contract claim, Count V, against Defendant Cornell University based on *res judicata*, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's New York Human Rights Law and Civil Rights Law claims, Count VI and VII, against Defendants Cornell University, Greenwood, Skorton, Hay, Garvey, Grant, Shoemaker, Mittman, Lepage, Gainor, Plater, Poppensiek, Fajans, Sangren, Santiago-Irizarry, Boyer, and Miyazaki based on *res judicata*, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's New York Human Rights Law and Civil Rights Law claims, Count VI and VII, against Defendant Jordan for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 30 2017
      Syracuse, New York

                                            Frederick J. Scullin, Jr.
                                            Senior United States District Judge